*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0860**

State of Minnesota,
Appellant,

vs.

Russell Dennis Farrell,
Respondent.

**Filed December 27, 2016
Appeal dismissed
Hooten, Judge**

Olmsted County District Court
File No. 55-CR-14-5817

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, Michael E. Davis, Associate County Attorney, Rochester, Minnesota (for appellant)

Austin J. Swisher, Austin J. Swisher Law Office, Rochester, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Peterson, Judge; and Hooten, Judge.

## U N P U B L I S H E D   O P I N I O N

**HOOTEN**, Judge

In this appeal by the state, the state challenges the district court's grant of a new trial to the respondent defendant after a jury found him guilty of patronage of a prostitute in a

public place. Because we conclude that the state is not entitled to appeal as of right from the order granting a new trial, we dismiss the appeal.

## FACTS

On August 21, 2014, an undercover police officer with the Rochester Police Department placed an advertisement on a website. The advertisement was titled "XOXO Come Get a Taste of My Sweet Candy—$80 Specials XOXO—26." The advertisement stated, among other things, "My attitude will amaze you, my looks will seduce you & my skills will WOW you!," included three photographs of women in underwear and a pictogram of the phrase "I heart sex," and listed a phone number. At approximately 1:35 p.m., the officer missed a phone call, but returned the call a short time later. The officer spoke with a man, who identified himself as Dennis. The man asked if the officer would be available around 2:00 p.m., where she was located, and what the donation for her time would be. The officer knew that the term "donation" commonly refers to the price for a sexual act. The officer stated that the donation was $100 for a half hour and $150 for an hour, and the man indicated that he wanted a half hour. The officer told the man to call when he was nearby so that she could tell him what hotel she was in.

In two subsequent phone calls, the officer told Dennis what hotel and room she was in. Soon after, a man, later identified as respondent Russell Dennis Farrell, knocked on the door of the hotel room where the officer was located. Farrell indicated that he was looking for 30 to 45 minutes of the officer's time and that he would "try to make [her] happy too." After telling Farrell to pick out a condom and take his money out, the officer went into the bathroom. The arrest team, which had real-time surveillance set up in the room, observed

2

that Farrell took off his shirt and shoes and picked up a condom, but set it down without opening it. At that point, the arrest team entered the room and arrested Farrell. Upon searching Farrell, the police discovered $100 in his pocket and $40 in his shoe.

Farrell was charged with one count of patronage of a prostitute in a public place. Minn. Stat. § 609.324, subd. 2(2) (2014), provides that a person who "hires, offers to hire, or agrees to hire an individual 18 years of age or older to engage in sexual penetration or sexual contact" in a public place is guilty of a gross misdemeanor. Within the prostitution statutory scheme, "sexual contact" is defined as (1) "the intentional touching by an individual of a prostitute's intimate parts" or (2) "the intentional touching by a prostitute of another individual's intimate parts." Minn. Stat. § 609.321, subd. 10 (2014). "Prostitute," for the purposes of section 609.324, "means an individual who engages in prostitution by being hired, offering to be hired, or agreeing to be hired by another individual to engage in sexual penetration or sexual contact." Minn. Stat. § 609.321, subd. 8 (2014). The definition of "sexual penetration," however, does not use the term "prostitute."[1] *See* Minn. Stat. § 609.321, subd. 11 (2014).

---

[1] Minn. Stat. § 609.321, subd. 11, provides the following definition of "sexual penetration":
> "Sexual penetration" means any of the following acts, if for the purpose of satisfying sexual impulses: sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion however slight into the genital or anal openings of an individual's body by any part of another individual's body or any object used for the purpose of satisfying sexual impulses. Emission of semen is not necessary.

A jury trial was held on March 2, 2016. In closing arguments, defense counsel argued that the officer would have to be an "actual prostitute" in order for the jury to find that Farrell made an offer to pay the officer for sexual contact because of the use of the term "prostitute" in the definition of "sexual contact." In rebuttal argument, the prosecutor stated that, with regard to the prostitute requirement, "[W]hen [the statutory definition of 'sexual contact'] say[s] 'prostitute,' at th[e] point in time he's making this transaction that's what he thinks she is. The law doesn't require that she actually be an actual prostitute. In this case he believed that she [was a prostitute.]" Defense counsel objected, arguing that the prosecutor's argument mischaracterized the law, and the district court overruled the objection and denied surrebuttal argument. Farrell moved for a mistrial, but the district court denied the motion. The jury found Farrell guilty of patronage of prostitution in a public place.

Farrell moved for a new trial, arguing, among other things, that the district court erred by denying surrebuttal argument or a mistrial because of the misleading statements made on a material issue of law by the prosecutor. The district court granted the motion, reasoning that the prosecutor's argument improperly represented to the jury that it could determine that the officer met the definition of "prostitute" if Farrell believed she was a prostitute. The district court acknowledged that the jury, which was provided with the statutory definition of "prostitute," could have read the definition correctly and determined that the undercover officer met the statutory definition because she made an offer to be hired for a sexual act to Farrell. However, the district court concluded that there was a significant danger that the jury was confused or misled by the prosecutor's argument and

4

considered Farrell's subjective belief that the officer was a prostitute, rather than determining whether the officer met the statutory definition of a prostitute. Based upon its uncertainty as to whether the jury was confused, the district court concluded that a new trial was warranted. The state moved for reconsideration of the district court's decision, and the district court denied the motion. The state appealed the district court's order for a new trial. This court questioned jurisdiction and asked for supplemental briefing on the question of whether the state had an appeal as of right from the order granting a new trial.

### D E C I S I O N

The state argues that it is entitled to an appeal as of right because the district court based its order exclusively on a question of law that is important and doubtful. We disagree.

The state's right to appeal in a criminal matter is limited. *State v. Rourke*, 773 N.W.2d 913, 923 (Minn. 2009). "There must be a statute or court rule that permits the appeal, or the issue must arise by necessary implication from an issue where the [s]tate's right to appeal is expressly provided." *Id.* (quotation omitted). We strictly construe the rules governing the prosecution's right to appeal. *State v. Gilmartin*, 550 N.W.2d 294, 296 (Minn. App. 1996). Minn. R. Crim. P. 28.04, subd. 1(7), provides that the state has the right to appeal from an order for a new trial "if the district court expressly stated in its order or in an accompanying memorandum that it based its order exclusively on a question of law that, in the opinion of the district court, is so important or doubtful that the appellate courts should decide it." The district court included such a statement in its order denying the state's motion for reconsideration of its order granting a new trial to Farrell.

5

While the district court stated that its order for a new trial was based "exclusively on a question of law that," in its opinion, "is so important or doubtful that the appellate courts should decide it," the district court never explicitly identified the question of law that it believed we need to decide. The district court suggested, however, that the important question of law requiring appellate review was the question of whether an undercover officer could be a prostitute as that term is defined by Minn. Stat. § 609.321, subd. 8, or if an "actual prostitute" was required for conviction. The district court, however, correctly resolved this issue upon Farrell's motion for a new trial after examining the plain language of the statute, noting that an individual, even an undercover police officer, can meet the definition of a "prostitute" under the statute if the officer is hired, offers to be hired, or agrees to be hired to engage in sexual penetration or sexual contact. *See* Minn. Stat. § 609.321, subd. 8. Based upon this definition, the district court properly determined that the prosecutor did not misstate the law by stating that "[t]he law doesn't require that [the undercover officer] be an actual prostitute." Therefore, the district court's grant of a new trial was not based upon an important and doubtful issue as to whether the state had to prove that the officer met the legal definition of a "prostitute."

The other question of law seemingly identified by the district court is whether the prosecutor's argument improperly applied a gloss to the statute, taking the statutory term "prostitute" and converting it into something like "a person the actor believes to be a prostitute." Because this is the only misstatement of law by the prosecutor identified by the district court, we presume that it must have been the reason for the district court's grant of a new trial to Farrell and therefore the question of law that the district court must identify

6

as "so important or doubtful" that an appellate court should decide it. The district court, however, provided no explanation regarding why this question, on which it based its order granting a new trial, was important or doubtful. Instead, the district court's memorandum only explains why it thinks the question of whether the undercover officer was required to be an "actual prostitute" is important or doubtful. Under these circumstances, where the district court failed to identify the question of law on which it based its order for a new trial or explain why the question was important or doubtful, we conclude that we lack jurisdiction over this appeal and must dismiss it.

Even if the district court had correctly identified the question of law on which it based its order granting a new trial, we cannot say that the question is important or doubtful. The misstatement of the law that occurred in this case seems to be primarily the product of the unique circumstances of this case, namely, the prosecutor's attempts to rebut Farrell's incorrect statement of the law that the officer had to be an "actual prostitute." And, an opinion from this court would be unlikely to provide guidance in the future, particularly as some of the confusion that occurred at the district court regarding the term "prostitute" will likely be alleviated by a statutory amendment, applicable to offenses committed after August 1, 2015, that states that the fact that an undercover officer was involved in the detection or investigation of the offense is not a defense to prosecution. *See* Minn. Stat. § 609.325, subd. 3a (Supp. 2015); 2015 Minn. Laws ch. 65, art. 6, § 12, at 528. Therefore, we conclude that the question on which the district court based its order for a new trial was neither important nor doubtful.

**Appeal dismissed.**